

## NAILAH K. BYRD
## CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**April 15, 2026 14:10**

By: MYRON P. WATSON 0058583

Confirmation Nbr. 3822465

| | |
|---|---|
| STACEY SHANKLIN, AS ADMINISTRATOR OF THE ESTATE OF | CV 26 137134 |
| vs. | |
| SHAKER HEIGHTS CITY SCHOOL DISTRICT, ET AL. | **Judge:** JENNIFER O'DONNELL |

**Pages Filed:** 35

## EXHIBIT
## A

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **STACEY SHANKLIN**, as Administrator of the Estate of **CHARLES SHANKLIN**, Deceased, <br><br> Plaintiff, <br> 3611 Chelton Road <br> Shaker Heights, Ohio 44120 <br><br> v. <br><br> **SHAKER HEIGHTS CITY SCHOOL DISTRICT**, <br> 15600 Parkland Drive <br> Shaker Heights, Ohio 44120, <br><br> **CITY OF SHAKER HEIGHTS**, <br> 3400 Lee Road <br> Shaker Heights, Ohio 44120, <br><br> **SHAKER HEIGHTS PUBLIC LIBRARY BOARD OF TRUSTEES**, <br> 16500 Van Aken Boulevard <br> Shaker Heights, Ohio 44120, <br><br> **DR. DAVID GLASNER**, individually, <br> 15600 Parkland Drive <br> Shaker Heights, Ohio 44120, <br><br> **AMY L. SWITZER**, individually, <br> 16500 Van Aken Boulevard <br> Shaker Heights, Ohio 44120, <br><br> **GARY HARRIS**, individually, <br> 27621 Chagrin Blvd, Apt 231 <br> Woodmere, Ohio 44122, <br><br> Defendants. | **CASE NO.:** _____ <br><br><br> **JUDGE:** _____ <br><br><br> **COMPLAINT** <br><br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff, Stacey Shanklin, as Administrator of the Estate of Charles Shanklin, deceased, by and through undersigned counsel, for her Complaint against the above-named Defendants, states and avers as follows:

## I.    INTRODUCTION

1.    This action seeks legal and equitable relief for wrongful death, negligence, negligent security, premises liability, reckless and wanton conduct, violations of Ohio Rev. Code Ann. § 2744.03 and Ohio Rev. Code Ann. § 2744.02(B)(4), negligent supervision, and violations of 42 U.S.C. § 1983 arising from the fatal shooting of Charles Shanklin at the Shaker Heights Public Library on April 1, 2025.

2.    The death of Charles Shanklin was not an unforeseeable tragedy. It was the predictable and preventable consequence of systematic, reckless failure by multiple governmental entities—the Shaker Heights City School District, the City of Shaker Heights, and the Shaker Heights Public Library Board of Trustees—to protect library patrons from foreseeable violence despite overwhelming, continuous, and specific warnings of escalating danger.

3.    Despite approximately 400 police calls to the Shaker Heights Public Library in the 16 months preceding the shooting—including calls for assaults, weapons offenses, domestic violence, child abuse, and physical altercations—Defendants implemented zero security measures. No security guards. No metal detectors. No weapons screening. No access controls. No coordination between the adjacent high school and the library. Nothing.

4. The juvenile who killed Charles Shanklin was a student at Shaker Heights High School with a documented violent criminal record, including an open felony case for aggravated robbery. He walked from the high school to the immediately adjacent, entirely unsecured library, carried a concealed firearm through the front entrance without encountering any security measure of any kind, and fatally shot Charles Shanklin in front of other patrons.

5. This case demands accountability for the systematic, reckless indifference that enabled the preventable killing of Charles Shanklin and seeks justice for the profound losses suffered by his family and statutory beneficiaries.

## II. PARTIES

6. Plaintiff Stacey Shanklin is the mother of Charles Shanklin, deceased, and resides at 3611 Chelton Road, Shaker Heights, Ohio 44120. She has been duly appointed as the Administrator of the Estate of Charles Shanklin by the Cuyahoga County Probate Court. Plaintiff brings this action in her capacity as Administrator of the Estate pursuant to **Ohio Revised Code § 2125.01 et seq.** (Ohio Wrongful Death Act) and on behalf of the statutory beneficiaries of the decedent.

7. **Defendant Shaker Heights City School District** (hereinafter "School District") is a political subdivision of the State of Ohio organized and existing under Ohio law, with its principal offices located at 15600 Parkland Drive, Shaker Heights, Ohio 44120. The School District operates Shaker Heights High School, located immediately adjacent to the Shaker Heights Public Library at 16500 Van Aken Boulevard. The School District's Board of Education appoints all seven members of the Shaker Heights Library Board of Trustees

pursuant to Ohio Revised Code § 3375.15(A), and fills all vacancies on the Library Board pursuant to R.C. § 3375.15(B). The juvenile assailant who killed Charles Shanklin was a student enrolled at Shaker Heights High School, and the School District had actual or constructive knowledge of his violent criminal history. In January 2024, a violent brawl at Shaker Heights High School was severe enough to force the closure of the school, providing the School District with actual notice of escalating student violence.

8.    **Defendant City of Shaker Heights** (hereinafter "City") is a municipal corporation and political subdivision of the State of Ohio, with its principal offices located at City Hall, 3400 Lee Road, Shaker Heights, Ohio 44120. The City operates the Shaker Heights Police Department, which responded to approximately 400 calls at the Shaker Heights Public Library between January 2024 and April 2025—averaging approximately 25 calls per month—including calls for assaults, weapons offenses, domestic violence, child abuse, and physical fights. The City is responsible for the public safety of its residents and visitors and exercises governmental authority over the geographic area encompassing both the library and the high school.

9.    **Defendant Shaker Heights Public Library Board of Trustees** (hereinafter "Library Board") is a body politic and political subdivision of the State of Ohio, appointed by the Shaker Heights Board of Education pursuant to R.C. § 3375.15. The Library Board has control and management of the Shaker Heights Public Library under R.C. § 3375.40. At all relevant times, the Library Board operated the Shaker Heights Public Library at 16500 Van Aken Boulevard, Shaker Heights, Ohio 44120, as a facility open to the public, and

failed to implement any security measures despite approximately 400 police calls, documented weapons offenses, and an escalating pattern of violence at the facility.

10.     **Defendant Dr. David Glasner** (hereinafter "Superintendent") is an individual who, at all times relevant hereto, served as Superintendent of the Shaker Heights City School District, with his office located at 15600 Parkland Drive, Shaker Heights, Ohio 44120. The Superintendent is sued in his individual capacity for acts and omissions constituting reckless, wanton, and/or bad faith conduct within the meaning of R.C. § 2744.03(A)(6)(b). As Superintendent, Defendant Glasner was the chief administrative officer of the School District and was responsible for coordinating safety and security across the District's operations, including coordination with the Library Board—whose members the Board of Education appoints. He had actual or constructive knowledge of the approximately 400 police calls to the adjacent library, the January 2024 school closure due to violence, and the presence of students with known violent criminal histories congregating at the library.

11.     **Defendant Amy L. Switzer** (hereinafter "Library Director") is an individual who, at all times relevant hereto, served as Director of the Shaker Heights Public Library, with her office located at 16500 Van Aken Boulevard, Shaker Heights, Ohio 44120. The Library Director is sued in her individual capacity for acts and omissions constituting reckless, wanton, and/or bad faith conduct within the meaning of R.C. § 2744.03(A)(6)(b). As Library Director, Defendant Switzer was responsible for the day-to-day operations, management, safety, and security of the library. She had actual knowledge of the approximately 400 police calls, the escalating pattern of violence, and the complete absence of security measures at the facility. Following the shooting, Defendant Switzer

publicly acknowledged that the library was only in the "preliminary stages of gathering ideas and researching long-term safety solutions," confirming that no security solutions existed prior to the fatal shooting.

12. **Defendant Gary Harris** (hereinafter "Library Security Manager") is an individual residing at 27621 Chagrin Blvd, Apt 231, Woodmere, Ohio 44122, who, at all times relevant hereto, served as a library staff employee with the title of Security Manager at the Shaker Heights Public Library. Defendant Harris is sued in his individual capacity for acts and omissions constituting reckless, wanton, and/or bad faith conduct within the meaning of R.C. § 2744.03(A)(6)(b). Upon information and belief, Defendant Harris was responsible for monitoring the library's surveillance camera system and for contacting law enforcement when incidents occurred on library premises. Upon further information and belief, at the time of the shooting on April 1, 2025, Defendant Harris was not actively monitoring the surveillance cameras, failed to observe the juvenile assailant entering the library with a concealed firearm, and failed to immediately contact law enforcement, thereby delaying emergency response and exacerbating the consequences of the shooting.

### III.    JURISDICITON AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to Ohio Revised Code § 2305.01, as this is a civil action for wrongful death, negligence, and other tortious conduct.

14. This Court has jurisdiction over the federal claims asserted under 42 U.S.C. § 1983 pursuant to the concurrent jurisdiction of state courts over federal civil rights claims.

15.     This Court has jurisdiction over the Defendants because each Defendant is a political subdivision, entity, or individual residing or operating within Cuyahoga County, Ohio.

16.     Venue is proper in Cuyahoga County pursuant to Ohio Civil Rule 3(B) because the events and omissions giving rise to this action occurred in Cuyahoga County, Ohio, and all Defendants reside or maintain principal offices in Cuyahoga County.

## IV.     GENERAL ALLEGATIONS

### A.  The Fatal Shooting of Charles Shanklin

17.     On April 1, 2025, at approximately 4:42 p.m., Charles Shanklin, an 18-year-old resident of Shaker Heights, Ohio, was present at the Shaker Heights Public Library, located at 16500 Van Aken Boulevard, Shaker Heights, Ohio, as a lawful patron and invitee of the premises.

18.     At that time, a juvenile student enrolled at Shaker Heights High School entered the Shaker Heights Public Library carrying a firearm concealed in his waistband. No security guards, metal detectors, weapons screening protocols, controlled entry points, or any other security measure was in place at the library. The juvenile assailant walked through the front entrance without encountering any impediment or any form of screening.

19.     The juvenile assailant approached Charles Shanklin from behind and fatally shot him multiple times in view of other library patrons and staff.

20.     Charles Shanklin was transported to University Hospital Main Campus, where he succumbed to his injuries and was pronounced dead.

21.     At the time of the shooting, Defendants had implemented no security measures whatsoever at the Shaker Heights Public Library. There were no security guards, no metal detectors, no weapons screening protocols, no controlled entry points, no bag checks, and no active monitoring of the library's surveillance cameras by library staff, including Defendant Gary Harris.

22.     Upon information and belief, at or around the time of the shooting, Defendant Gary Harris, the library's Security Manager, was not actively monitoring the library's surveillance camera system. Had Defendant Harris been monitoring the surveillance cameras, he could have observed the juvenile assailant entering the library with a firearm, alerted library patrons and staff, and contacted law enforcement before or immediately upon the shooting, potentially reducing the severity of the incident and expediting emergency response.

**B.  Overwhelming Evidence of Foreseeability**

*(i) January 2024 School Brawl and School Closure*

23.     In January 2024, a violent brawl erupted at Shaker Heights High School that was sufficiently severe to force the closure of the entire school. This event provided the School District, the City, and the Library Board with actual notice of escalating student violence in the Shaker Heights community. The school closure was widely reported and known to all Defendants.

24. The January 2024 brawl demonstrated that students enrolled at Shaker Heights High School included individuals capable of serious physical violence. It further demonstrated the potential for violence to spill beyond school boundaries, as students who were involved in school violence predictably congregated at the immediately adjacent library during after-school hours.

### (ii) Extraordinary Volume of Police Activity at the Library

25. Between January 2024 and April 2025—a period of approximately 16 months—the Shaker Heights Police Department responded to approximately 400 calls at the Shaker Heights Public Library's main branch. This averages to approximately 25 police calls per month, or nearly one police call per day that the library was open.

26. These calls encompassed a wide range of criminal and violent activity, including but not limited to: assaults, weapons offenses, domestic violence incidents, child abuse, physical fights, disorderly conduct, and disturbances. The sheer volume of police activity at this single public facility is extraordinary and far exceeds what would be expected at a public library.

27. Each of the approximately 400 police calls constituted individual notice to the City of Shaker Heights that criminal violence was occurring at the library on a regular and escalating basis. The City's own police department maintained records of these calls, and the City therefore had actual knowledge of the volume, nature, and escalation of violent activity at the library.

Electronically Filed 04/15/2026 14:10 / / CV 26 137134 / Confirmation Nbr. 3822465 / CLYM1

28.    Upon information and belief, the Library Board and Library Director were aware of the police activity at the library, as police officers regularly responded to incidents inside the library during operating hours. Upon further information and belief, the School District and Superintendent were aware or should have been aware of the volume of police activity at the facility immediately adjacent to their high school.

### (iii) Known Weapons Offenses at the Library

29.    Among the approximately 400 police calls were documented weapons offenses occurring at the library. These weapons offenses provided Defendants with specific, particularized notice that firearms and other weapons were being brought into the library—the very harm that ultimately befell Charles Shanklin. The presence of weapons offenses in the police call history elevates the foreseeability analysis from general criminal activity to the specific type of harm that occurred: a shooting.

### (iv) The Shooter's Documented Violent Criminal History

30.    The juvenile assailant had a documented and serious violent criminal record. Dispatch records reflect that the juvenile had at least one open case involving a Felony 1 aggravated robbery charge. The juvenile's date of birth, as reflected in dispatch records, is June 18, 2009, making him 15 years old at the time of the shooting.

31.    Upon information and belief, the School District had actual or constructive knowledge of the juvenile assailant's violent criminal history through its enrollment records, school discipline system, and any coordination with the Shaker Heights Police Department or juvenile justice system. The School District's failure to take any action to address the

Electronically Filed 04/15/2026 14:10 / / CV 26 137134 / Confirmation Nbr. 3822465 / CLYM1

known danger posed by this student—including failing to implement any supervision or safety protocols for the after-school period when the student and others predictably congregated at the adjacent library—constitutes a direct failure of the District's supervisory obligations.

### (ⅴ) *Regional Pattern of Library Shootings in Northeast Ohio*

32. Prior to the fatal shooting of Charles Shanklin, at least four separate shootings had occurred at public libraries in Northeast Ohio, establishing a well-documented regional pattern of gun violence at library facilities:

    (a). November 2013: Martin Luther King Library, Cleveland, Ohio—shots were fired inside the library;

    (b). June 2016: Pearl Road Library, Cleveland, Ohio—a shooting resulted in one person being hospitalized;

    (c). July 2019: South Brooklyn Library, Cleveland, Ohio—a 19-year-old was fatally shot by two juveniles inside the library;

    (d). October 2024: Maple Heights Library, Maple Heights, Ohio—a shooting resulted in two women being hospitalized. This incident occurred just five months before Charles Shanklin's killing, in a community immediately adjacent to Shaker Heights.

33.  This regional pattern of library shootings provided all Defendants with constructive notice that public libraries in Northeast Ohio were targets for gun violence and that the specific type of harm that killed Charles Shanklin was not only foreseeable but had occurred repeatedly in the same geographic region.

### (vi) Proximate Geography and Foreseeable Congregation Zone

34.  The Shaker Heights Public Library is located immediately adjacent to Shaker Heights High School. The library is a well-known and predictable congregation point for high school students during after-school hours. Students routinely walk directly from the high school to the library after the school day ends, arriving at the library during the peak after-school period—precisely the time period during which Charles Shanklin was killed at approximately 4:42 p.m.

35.  Upon information and belief, the School District and Superintendent were aware that students routinely congregated at the library after school. Upon further information and belief, the school and library share physical proximity including common access pathways, and students treat the library as a de facto extension of the school campus during after-school hours.

### (vii) Governance Connection Between School District and Library

36.  The Shaker Heights Board of Education appoints all seven members of the Shaker Heights Library Board of Trustees pursuant to Ohio Revised Code § 3375.15(A). The Board of Education also fills all vacancies on the Library Board pursuant to R.C. § 3375.15(B). This

means that every individual who governs library operations—including decisions regarding safety, security, and patron protection—was selected by the School District's Board of Education.

37. While the Library Board has independent operational control and management under R.C. § 3375.40, the Board of Education's exclusive appointment authority establishes a direct governance connection between the School District and the library. The Board of Education had the authority and the means to select trustees who would prioritize patron safety and security, and to use its appointment power to influence library governance regarding the well-documented security crisis.

38. Upon information and belief, the Board of Education took no steps to use its appointment authority to address the security situation at the library, despite the approximately 400 police calls, weapons offenses, and the immediate adjacency of the library to the high school.

### (viii) School-Library Coordination and Shared Operations

39. Upon information and belief, the School District and the Library Board have engaged in joint programming, shared operations, or coordinated activities, including but not limited to: referral of students to the library for homework assistance or after-school activities; library programming designed for or targeted at Shaker Heights High School students; shared use of physical infrastructure, access pathways, or parking facilities between the school and library; and any communications, meetings, or coordination between School

District administrators and Library Board trustees or staff regarding student behavior, safety, or operations.

40.    To the extent that such joint programming, shared operations, or coordinated activities existed, the School District affirmatively channeled its students toward the library—a facility it knew to be the site of escalating violence—without implementing any security coordination or safety protocols. Discovery will reveal the nature and extent of these coordinated activities.

### (ix) Complete Absence of Security Measures

41.    Despite the totality of the foregoing warnings, Defendants implemented zero security measures at the Shaker Heights Public Library. There were no security guards, no metal detectors, no weapons screening protocols, no bag checks, no controlled entry points, no active surveillance monitoring, no coordination between the school and library regarding student safety, and no crisis response protocols. The library operated as an entirely open, unsecured public facility during hours when violent students congregated at the facility daily.

42.    The complete absence of any security measures is not an oversight or a legitimate exercise of policy discretion. When considered against the backdrop of approximately 400 police calls in 16 months, documented weapons offenses, a January 2024 school closure due to violence, a student population with known violent criminal histories, and four prior library shootings in the same region, the failure to implement any security measures whatsoever constitutes conscious, deliberate disregard of known danger.

### (x) Library Staff Failure to Monitor and Respond

43.    Upon information and belief, at the time of the shooting, the library's surveillance camera system was not being actively monitored by Defendant Gary Harris or any other library staff member. The surveillance system captured video footage of the juvenile assailant entering the library with a concealed firearm, approaching Charles Shanklin, and shooting him. This footage demonstrates that the shooting was visible on the surveillance system and could have been observed in real time had the system been actively monitored.

44.    Defendant Harris's failure to monitor the surveillance system and to immediately contact law enforcement upon the shooting delayed emergency response and deprived Charles Shanklin and other library patrons of the opportunity for timely intervention.

### (xi) Failure to Train Library Staff and School Personnel

45.    Despite the extraordinary volume of violent incidents at the Shaker Heights Public Library—approximately 400 police calls in 16 months, including assaults, weapons offenses, and physical altercations—Defendants failed to provide any training to library staff or school personnel regarding security, threat recognition, emergency response, active shooter protocols, de-escalation techniques, or surveillance monitoring procedures.

46.    Defendant Gary Harris held the title of Security Manager at the Shaker Heights Public Library. Upon information and belief, Defendant Harris received no formal training in surveillance monitoring, threat detection, identification of concealed weapons, emergency response protocols, active shooter response, or coordination with law enforcement. Despite

his title and ostensible security responsibilities, Defendant Harris was not trained or equipped to perform the security functions that his position required and that the circumstances at the library demanded.

47. Upon information and belief, no library staff member received training in recognizing potential threats, responding to violent incidents, implementing emergency lockdown or evacuation procedures, or coordinating with law enforcement in the event of an emergency. The Library Board and Library Director failed to establish, implement, or require any training program addressing the well-documented and escalating pattern of violence at the facility.

48. Upon information and belief, the School District failed to train its teachers, administrators, or staff on identifying at-risk students with known violent propensities, failed to establish protocols for communicating safety concerns to the adjacent library, and failed to implement any training regarding after-school student safety coordination with the library. Despite knowledge that students with documented violent criminal histories—including the juvenile assailant—regularly congregated at the adjacent library, the School District provided no guidance or training to its personnel on how to address this known danger.

49. The failure to provide any training to library staff and school personnel is particularly egregious given that: (a) the library experienced approximately 400 police calls in 16 months; (b) weapons offenses were documented at the library; (c) a Security Manager position existed but the individual holding it was not trained to perform security functions; (d) the library's surveillance system existed but no staff was trained to actively monitor it; (e) four prior library shootings in Northeast Ohio provided notice that active shooter events

at libraries were a real and recurring danger; and (f) active shooter training programs, de-escalation training, and emergency response training are widely available, standard, and commonly implemented at public facilities with significantly lower risk profiles than the Shaker Heights Public Library.

50. The complete absence of any training program constitutes deliberate indifference to the safety of library patrons and the public. The need for training was so obvious and the inadequacy so likely to result in a constitutional violation that Defendants' failure to train can reasonably be said to represent a policy of deliberate indifference to the rights of library patrons, including Charles Shanklin.

## V.     LEGAL CLAIMS

### *FIRST CLAIM FOR RELIEF*

**Wrongful Death Pursuant to R.C. § 2125.01 et seq.**

*(Against All Defendants)*

51. Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

52. Under Ohio Revised Code § 2125.01, when the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued shall be liable to an action for damages.

53.    The death of Charles Shanklin was caused by the wrongful acts, neglect, and default of Defendants, including but not limited to their failure to provide any security measures at the Shaker Heights Public Library, their failure to train library staff and school personnel on security, threat recognition, and emergency response, their failure to coordinate safety between the school and library, their failure to supervise known violent students, their failure to monitor surveillance systems, and their reckless disregard of approximately 400 police calls and escalating violence at the facility.

54.    Had Defendants exercised ordinary care and implemented reasonable security measures—including but not limited to security guards, metal detectors, weapons screening, or access controls—the juvenile assailant could not have entered the library carrying a concealed firearm and Charles Shanklin would not have been killed.

55.    Charles Shanklin's death has caused damages to the statutory beneficiaries, including but not limited to: loss of support; loss of services; loss of society, companionship, comfort, and consortium; mental anguish and emotional distress; funeral and burial expenses; and medical expenses incurred prior to death.

56.    Pursuant to R.C. § 2125.02, Plaintiff seeks compensatory damages in an amount to be determined at trial, together with all other relief authorized by law.

### SECOND CLAIM FOR RELIEF

### Negligence and Premises Liability

*(Against All Defendants)*

57. Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

58. At all times relevant hereto, Charles Shanklin was a lawful patron and invitee of the Shaker Heights Public Library. Under Ohio law, property owners who invite the public onto their premises owe invitees a duty of ordinary care to protect them from foreseeable harm, including the duty to take reasonable precautions against foreseeable criminal acts by third parties.

59. The foreseeability of criminal violence at the Shaker Heights Public Library overwhelms any threshold under the totality of the circumstances: approximately 400 police calls in 16 months, including weapons offenses; the January 2024 school closure; the shooter's documented felony record; four prior Northeast Ohio library shootings; daily congregation of high school students at the unsecured facility; and the governance connection between the School District and Library Board.

60. Defendants breached their duty of care by failing to implement any security measures whatsoever at the Shaker Heights Public Library, by failing to train library staff on security, threat recognition, and emergency response, by failing to coordinate safety between the school and library, and by failing to address the escalating pattern of violence despite continuous and specific notice.

61. As a direct and proximate result of Defendants' negligence and breach of duty, the juvenile assailant was able to enter the Shaker Heights Public Library with a concealed firearm and fatally shoot Charles Shanklin.

## THIRD CLAIM FOR RELIEF

### Negligent Security

*(Against All Defendants)*

62.　Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

63.　The Shaker Heights Public Library had an extraordinary and well-documented history of criminal activity, including approximately 400 police calls in 16 months encompassing assaults, weapons offenses, domestic violence, child abuse, and physical altercations. Defendants had a duty to provide adequate security measures commensurate with this known and escalating level of criminal activity.

64.　Defendants failed to provide any security measures at the library. Had Defendants implemented reasonable security measures, such measures would have substantially reduced or eliminated the assailant's ability to enter the library with a concealed firearm.

65.　Additionally, Defendant Harris's failure to actively monitor the surveillance system and to immediately contact law enforcement upon the shooting further exacerbated the danger to library patrons and delayed emergency response.

66.　Defendants' complete failure to provide any security at the Shaker Heights Public Library, despite overwhelming and continuous notice of escalating criminal violence, was the direct and proximate cause of the death of Charles Shanklin.

## FOURTH CLAIM FOR RELIEF

## Violation of Ohio Rev. Code Ann. § 2744.03 — Reckless and Wanton Conduct

*(Against All Defendants)*

67. Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

68. Under Ohio Rev. Code Ann. § 2744.03(A)(5), a political subdivision is immune from liability if the injury resulted from the exercise of judgment or discretion unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. Under R.C. § 2744.03(A)(6)(b), employees of political subdivisions are not immune if their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

69. Defendants were continuously and repeatedly notified of escalating danger through specific, documented events and conditions that made the probability of serious harm not merely foreseeable but virtually certain. These included:

   (a). The January 2024 school brawl and school closure, providing actual notice of student violence;

   (b). Approximately 400 police calls to the library in 16 months, averaging 25 per month;

(c). Documented weapons offenses at the library, providing specific notice of firearm risks;

(d). The juvenile assailant's known violent criminal record, including an open aggravated robbery case;

(e). Four prior library shootings in Northeast Ohio between 2013 and 2024;

(f). The daily congregation of high school students—including students with known violent propensities—at the unsecured library.

(g). The complete absence of any security measures despite all of the foregoing.

(h). The complete absence of any training for library staff—including Security Manager Gary Harris—on surveillance monitoring, threat detection, emergency response, or active shooter protocols, despite the extraordinary volume of violent incidents at the facility.

70.    Despite this overwhelming, continuous, and specific notice, Defendants made a conscious decision to implement zero security measures at the Shaker Heights Public Library. This was not an oversight, a lack of resources, or a legitimate exercise of discretion. It was a deliberate choice to maintain an entirely open, unsecured public facility in the face of

escalating, documented, and specific danger. This constitutes wanton and reckless conduct that defeats any claim of sovereign immunity.

### FIFTH CLAIM FOR RELIEF

### Liability Under R.C. § 2744.02(B)(4) — Buildings Exception to Immunity

*(Against Defendant Library Board, Defendant School District, and Defendant City)*

71.    Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

72.    Under the Ohio Political Subdivision Tort Liability Act, R.C. Chapter 2744, political subdivisions are generally immune from tort liability for governmental functions. However, R.C. § 2744.02(B)(4) provides an exception to this immunity where injury or death results from the political subdivision's negligent failure to keep public buildings safe.

73.    Immunity does not apply under R.C. § 2744.02(B)(4) when: (1) injury occurs on grounds of buildings used for governmental functions; (2) the political subdivision negligently fails to keep the premises in a reasonably safe condition; (3) the failure to keep the premises safe is the proximate cause of the injury; and (4) the political subdivision had actual or constructive notice of the unsafe condition.

74.    The Shaker Heights Public Library is a building used for a governmental function. The complete absence of security measures—including the absence of security guards, metal

detectors, weapons screening, controlled entry points, and active surveillance monitoring—in a facility where approximately 400 police calls occurred in 16 months, where weapons offenses were documented, and where violent students congregated daily, constitutes a failure to keep the premises in a reasonably safe condition.

75. All Defendants had actual and constructive notice of the unsafe condition at the library through the approximately 400 police calls, the January 2024 school closure, the documented weapons offenses, and the regional pattern of library shootings. The failure to keep the library safe was the proximate cause of Charles Shanklin's death.

76. As to the School District specifically, the District's connection to the library through its exclusive appointment of all Library Trustees under R.C. § 3375.15, the physical adjacency of the school to the library, and the daily use of the library by the District's students bring the District within the scope of the buildings exception.

## SIXTH CLAIM FOR RELIEF

### Individual Liability Under R.C. § 2744.03(A)(6)(b)

*(Against Defendant Superintendent, Defendant Library Director, and Defendant Gary Harris)*

77. Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

78. Under R.C. § 2744.03(A)(6)(b), employees of political subdivisions are not immune from liability if their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. The individual employee immunity analysis under R.C. §

2744.03(A)(6)(b) does not require the plaintiff to satisfy the entity-level Tier Two exceptions under R.C. § 2744.02(B). Reckless and wanton conduct by individual employees defeats employee immunity directly.

79. Each Individual Defendant occupied positions of decision-making authority or operational responsibility regarding security, safety, and patron protection. Each was aware or should have been aware of the approximately 400 police calls, the escalating pattern of violence, and the complete absence of security measures at the library. Each failed to take any action to address the known danger, despite having the authority and the obligation to do so.

80. Defendant Glasner, as Superintendent, failed to coordinate security with the adjacent library, failed to supervise known violent students during the after-school period, and failed to use the Board of Education's governance authority over the Library Board to address the security crisis.

81. Defendant Switzer, as Library Director, failed to implement any security measures at the library despite actual knowledge of approximately 400 police calls and escalating violence, and publicly acknowledged after the shooting that the library was only in the "preliminary stages" of researching safety solutions.

82. Defendant Harris, as Security Manager, failed to actively monitor the surveillance camera system at the time of the shooting, failed to observe the juvenile assailant entering the library with a firearm, and failed to immediately contact law enforcement. Upon information and belief, Defendant Harris had received no training on how to perform the

security functions his position required, yet continued to occupy the position without seeking or demanding such training.

83. The reckless and wanton conduct of each Individual Defendant was a direct and proximate cause of the death of Charles Shanklin.

## SEVENTH CLAIM FOR RELIEF

### Negligent Supervision

*(Against Defendant School District)*

84. Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

85. Ohio law recognizes that school districts maintain a special relationship with students, imposing heightened supervisory duties. The School District owed a duty to supervise its students and to take reasonable precautions against foreseeable student violence, including violence by students with known violent propensities.

86. The juvenile assailant who killed Charles Shanklin was a student enrolled at Shaker Heights High School. The School District had actual or constructive knowledge of this student's violent criminal history, including an open felony case for aggravated robbery. The School District's failure to take any supervisory action regarding this student— including failing to implement safety protocols for the after-school period when the student predictably congregated at the adjacent library—constitutes negligent supervision.

87. The Shaker Heights Public Library's immediate adjacency to Shaker Heights High School, its well-known function as a student congregation point during after-school hours, and the School Board's appointment of the Library Board of Trustees together establish that the library was a foreseeable extension of the school environment where the District's supervisory obligations had continuing relevance.

88. The School District's failure to supervise its known violent student was a direct and proximate cause of the death of Charles Shanklin.

## *EIGHTH CLAIM FOR RELIEF*

### Violation of 42 U.S.C. § 1983 — State-Created Danger

*(Against Defendant School District, Defendant Superintendent, and Defendant Library Director)*

89. Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

90. 42 U.S.C. § 1983 provides that every person who, under color of state law, subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law.

91. At all times relevant hereto, Defendants School District, Superintendent Glasner, and Library Director Switzer acted under color of state law in their capacities as officials of political subdivisions of the State of Ohio.

92. The Fourteenth Amendment to the United States Constitution protects the liberty interest of individuals in their bodily integrity and personal security. Charles Shanklin had a constitutionally protected right to be free from state-created dangers to his life and bodily integrity.

93. Defendants' affirmative acts created or substantially increased the danger that resulted in Charles Shanklin's death. Specifically, the School District and its officials: (a) operated a high school immediately adjacent to the library and structured the school day so that students were released directly into the library's orbit without any transition, supervision, or security coordination; (b) upon information and belief, encouraged, directed, or facilitated student use of the library through joint programming, homework referrals, or coordinated activities; (c) appointed all seven members of the Library Board of Trustees—the governing body responsible for library safety—who then implemented zero security measures; and (d) maintained a "gun-free zone" at and around the school and library without any enforcement mechanism, creating a false sense of security.

94. Defendants knew of the specific danger at the library through the approximately 400 police calls, weapons offenses, January 2024 school closure, the assailant's known violent record, and regional library shootings. Despite this knowledge, Defendants took no protective action, thereby placing Charles Shanklin and other library patrons in special danger as distinguished from the public at large.

95. Defendants' conduct was so egregious, so outrageous, and so deliberately indifferent to known, obvious, and substantial danger as to shock the conscience. The deliberate decision to maintain zero security at a facility where 400 police calls occurred, weapons offenses

were documented, and violent students congregated daily—while taking no protective action of any kind—constitutes conscience-shocking deliberate indifference that violated Charles Shanklin's substantive due process rights under the Fourteenth Amendment.

96. The state-created danger was a direct and proximate cause of the death of Charles Shanklin.

97. **Failure to Train as Deliberate Indifference.** In addition to or in the alternative, Defendants are liable under 42 U.S.C. § 1983 for their deliberate indifference in failing to train library staff and school personnel on security, threat recognition, surveillance monitoring, and emergency response. The need for such training was obvious: the library experienced approximately 400 police calls in 16 months, including weapons offenses and assaults; four prior library shootings occurred in Northeast Ohio; and the library's own Security Manager had no training on how to monitor surveillance systems or respond to violent emergencies. The inadequacy of training was so likely to result in a violation of constitutional rights that Defendants' failure to train represents a policy or custom of deliberate indifference to the rights of library patrons, including Charles Shanklin's right to bodily integrity and personal security under the Fourteenth Amendment.

98. Had Defendants provided even minimal training to library staff on surveillance monitoring, threat detection, and emergency response—or had the School District trained its personnel on identifying at-risk students and coordinating safety with the adjacent library—the shooting of Charles Shanklin could have been prevented or its consequences mitigated. The failure to train was a direct and proximate cause of the constitutional violation.

99. Plaintiff seeks compensatory damages and all other relief available under 42 U.S.C. § 1983.

*NINTH CLAIM FOR RELIEF*

**Negligent Training**

*(Against Defendant Library Board, Defendant School District, and Defendant City)*

100.   Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs above.

101.   Under Ohio law, employers owe a duty to adequately train their employees when the employer knows or should know that the employee's duties involve foreseeable risks of harm to others and that training is necessary for the employee to safely perform those duties.

102.   Defendant Library Board employed Defendant Gary Harris as Security Manager of the Shaker Heights Public Library. Despite his title and security responsibilities, the Library Board failed to provide Defendant Harris with any training in surveillance monitoring, threat detection, identification of concealed weapons, emergency response, active shooter response, or coordination with law enforcement. The Library Board further failed to train any other library staff on security protocols, emergency response, de-escalation, or patron safety procedures. These training failures occurred despite the library's extraordinary history of approximately 400 police calls in 16 months, documented weapons offenses, and four prior library shootings in Northeast Ohio.

103.   Defendant School District failed to train its teachers, administrators, and staff on identifying students with known violent propensities who posed a danger to others, on communicating safety concerns to the adjacent library, and on after-school safety

coordination with the library. The School District knew that its students—including students with documented violent criminal records—congregated daily at the unsecured library, yet provided no training to its personnel on how to address this known and escalating danger.

104.    Defendant City, through its police department, responded to approximately 400 calls at the library in 16 months. Upon information and belief, the City failed to coordinate with the Library Board or the School District to recommend, provide, or facilitate security training for library staff, despite the extraordinary volume of police activity at the facility.

105.    The need for training was obvious and the failure to train was a direct and proximate cause of the death of Charles Shanklin. Had Defendant Harris been trained on surveillance monitoring and threat detection, he could have identified the juvenile assailant entering the library with a concealed firearm and contacted law enforcement before the shooting. Had library staff been trained on emergency response and active shooter protocols, the response to the shooting could have been faster and more effective. Had School District personnel been trained on identifying at-risk students and coordinating with the library, the known danger posed by the juvenile assailant could have been communicated and addressed before April 1, 2025.

## VI.    CAUSATION

106.    **But-For Causation.** Had Defendants implemented reasonable security measures at the Shaker Heights Public Library—including metal detectors, security guards, controlled entry points, and weapons screening—the juvenile assailant could not have entered the

library carrying a concealed firearm. Had Defendant Harris been trained on surveillance monitoring and threat detection, the assailant's entry with a weapon could have been detected and law enforcement could have been contacted before or immediately upon the shooting. Had library staff been trained on emergency response and active shooter protocols, the institutional response could have been faster and more effective. But for Defendants' complete failure to implement any security measures or provide any training, Charles Shanklin would not have been killed.

107. **Proximate Causation.** The fatal shooting of Charles Shanklin was the foreseeable, natural, and probable consequence of Defendants' failure to secure a public facility where violent students congregated daily, where hundreds of police incidents occurred, where weapons offenses were documented, and where regional shootings at similar facilities provided notice of the specific type of harm that occurred.

108. **Foreseeability of This Specific Harm.** Ohio courts do not require foreseeability of the exact manner of injury—only that harm of the general type was foreseeable. The totality of the circumstances here—including 400 police calls, weapons offenses, known violent students, the assailant's felony record, and four prior library shootings in Northeast Ohio— makes this specific type of harm not merely foreseeable but virtually certain.

109. **Feasibility of Security Measures.** Metal detectors and weapons screening are standard, commercially available, and widely deployed security measures used at courthouses, government buildings, schools, and other public facilities. Their implementation at the

library was feasible, practical, and would have directly prevented the juvenile assailant from entering with a concealed firearm.

## VII.   DAMAGES

110.   As a direct and proximate result of Defendants' wrongful acts, neglect, default, and reckless and wanton conduct, Charles Shanklin suffered fatal injuries, and Plaintiff and the statutory beneficiaries suffered the following damages:

(a). The conscious pain and suffering of Charles Shanklin prior to his death;

(b). Loss of support to the statutory beneficiaries;

(c). Loss of services to the statutory beneficiaries;

(d). Loss of society, companionship, comfort, and consortium;

(e). Mental anguish and emotional distress suffered by the statutory beneficiaries;

(f). Funeral and burial expenses;

(g). Medical and hospital expenses incurred prior to death;

(h). Such other compensatory damages as may be established at trial.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, on all Counts set forth above, Plaintiff Stacey Shanklin, as Administrator of the Estate of Charles Shanklin, deceased, prays for judgment in her favor and against Defendants, as follows:

(A). Compensatory damages in an amount to be determined at trial for each Count above;

(B). Damages for the conscious pain and suffering of Charles Shanklin prior to his death;

(C). Damages for loss of support, services, society, companionship, comfort, and consortium;

(D). Damages for mental anguish and emotional distress suffered by the statutory beneficiaries;

(E). Funeral, burial, and medical expenses;

(F). Pre-judgment and post-judgment interest as allowed by law;

(G). Reasonable costs and attorney's fees incurred in bringing this action;

(H). Injunctive relief requiring Defendants to implement appropriate security

measures to prevent future incidents of violence;

(I). Any and all other relief that this Court may deem just and proper.

Respectfully submitted,

/s/ Myron P. Watson
**MYRON P. WATSON, ESQ. (0058583)**
WATSON KUHLMAN, LLC
75 Erieview Plaza, Suite #108
Cleveland, Ohio 44114
(216) 274-1100
(216) 575-7664 (Fax)
myronwatson@kuhlwat.com
Attorney for Plaintiff Stacey Shanklin,
Administrator of the Estate of
Charles Shanklin, Deceased

**JURY DEMAND**
Pursuant to Civ.R. 38(B), Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Myron P. Watson
**MYRON P. WATSON, ESQ. (0058583)**
WATSON KUHLMAN, LLC
75 Erieview Plaza, Suite #108
Cleveland, Ohio 44114
(216) 274-1100
myronwatson@kuhlwat.com
Attorney for Plaintiff Stacey Shanklin,
Administrator of the Estate of
Charles Shanklin, Deceased